969 A.2d 1080

TOWNSHIP OF WEST ORANGE, A MUNICIPAL CORPORATION, PLAINTIFF–APPELLANT, v. 769 ASSOCIATES, LLC, A NEW JERSEY LIMITED LIABILITY COMPANY, DEFENDANT–RESPONDENT, AND MARICUSA CORP., A NEW JERSEY CORPORATION, LOCAL AMERICA BANK OF TULSA, A FEDERAL SAVINGS BANK AND AMERICAN CANCER SOCIETY, NEW JERSEY DIVISION, INC., DEFENDANTS.

Argued October 21, 2008—Decided April 9, 2009.

*Richard D. Trenk,* argued the cause for appellant (*Trenk, DiPasquale, Webster, Delia Fera & Sodono,* attorneys; *Henry M. Karwowski* and *Scott J. Koplik,* on the briefs).

*Marc J. Gross*, argued the cause for respondent (*Greenbaum, Rowe, Smith & Davis*, attorneys; *Mr. Gross* and *Christine F. Marks*, on the brief).

Justice LONG delivered the opinion of the Court.

We are called upon in this matter to interpret the Eminent Domain Act of 1971, *N.J.S.A.* 20:3–1 to –50, which provides in relevant part that:

> If the court renders final judgment that the condemnor cannot acquire the real property by condemnation or, if the condemnation action is abandoned by the condemnor, then the court shall award the owner of any right, or title to, or interest in such real property, such sum as will reimburse such owner for his reasonable costs, disbursements and expenses actually incurred, including reasonable attorney, appraisal, and engineering fees.
>
> [*N.J.S.A.* 20:3–26(b).]

In particular, we have been asked to declare the point from which fees and expenses may be recovered by the condemnee where a condemnation action is abandoned, and to decide whether *RPC* 1.5(a)(4) is applicable in this kind of a mandatory fee shifting case.

We have concluded that where a condemnation action is abandoned, a condemnee is entitled to reasonable fees and expenses from the point at which the property is formally targeted for condemnation. In respect of the calculation of fees, we hold that, as in all other cases, the analysis is governed by the reasonableness principles of *RPC* 1.5. However, *RPC* 1.5(a)(4) has no role to play on the issue of the condemnee's entitlement to fees; that entitlement is triggered by the abandonment itself. Nor is there warrant in an abandonment case for a proportionality reduction under *RPC* 1.5(a)(4) based on a comparison of "the amount involved and the results obtained." The polestar of the inquiry is reasonableness.

I.

The history of this action is explained in detail in our opinion in *Township of West Orange v. 769 Associates, LLC (769 Associates II)*, 172 *N.J.* 564, 800 *A.2d* 86 (2002). Briefly, 769 Associates

("Associates") owns property on Northfield Avenue in West Orange. In the late 1980s, Nordan Realty ("Nordan"), which owns the land behind Associates' property, set out to build a development of ninety-five single-family homes adjacent to a pre-existing development. Access was originally contemplated by use of Cedar Avenue. When neighbors objected to the use of Cedar Avenue, Nordan and West Orange turned their sights toward access via Northfield Avenue.

In 1992, Nordan and West Orange entered into a developer's agreement which, among other things, provided that Nordan would negotiate with adjacent property owners (including Associates) to secure the right of way to Northfield Avenue from its property and would construct the access road. If the negotiations failed, West Orange agreed to use its powers of eminent domain to obtain the land, with Nordan reimbursing it for all costs attendant upon the acquisition.

On July 11, 1995, the West Orange Township Council adopted Ordinance No. 1342–95, authorizing West Orange to condemn and acquire an easement across Associates' property "to facilitate the development of the Nordan Tract and bring new ratables to the Township."

In October 1995, Nordan applied to the West Orange planning board for major subdivision approval. On December 4, 1996, the Board approved the location of the access road along Associates' property "subject to the applicant acquiring property for the access road to Northfield Avenue, as provided in the developer's agreement." In January 1997, Associates filed an action in lieu of prerogative writs seeking to set aside Nordan's subdivision approval on a number of grounds, including that the approval should not be conditional, but should abide the condemnation proceeding. The complaint was dismissed upon the trial judge's holding that West Orange was empowered to approve the subdivision conditioned on condemnation of the necessary land.

On September 2, 1997, the West Orange Township Council adopted Ordinance No. 1445–97, authorizing condemnation of the

portion of Associates' land needed to construct the access road for Nordan. The ordinance noted that Nordan had unsuccessfully attempted to purchase the land from Associates. The stated purpose of the ordinance was "not only [to] serve the public's interest in securing access to the Project but ... also [to] provide access to other properties and proposed developments in the immediate vicinity."

On January 14, 1998, West Orange filed a condemnation complaint and an order to show cause seeking appointment of commissioners to determine the amount of compensation to be paid to Associates pursuant to *N.J.S.A.* 20:3–12. Associates' answer asserted, among other things, that the proposed condemnation constituted an unlawful taking of private property for private use. The condemnation action was stayed pending resolution of Associates' challenge.

The trial judge entered final judgment in favor of West Orange based on her conclusion that the taking involved a public purpose. The Appellate Division reversed, on the ground that the taking sought to advance only Nordan's private interests and thus was not for public use. *Twp. of W. Orange v. 769 Assocs., LLC,* 341 *N.J.Super.* 580, 594, 775 *A.*2d 657 (App.Div.2001), *rev'd,* 172 *N.J.* 564, 800 *A.*2d 86 (2002). We granted certification and reversed, declaring that: "[T]he fact that a private party may benefit from the taking does not render the taking private and not for 'public use.' " *769 Associates II, supra,* 172 *N.J.* at 573, 800 *A.*2d 86 (citing *County of Ocean v. Stockhold,* 129 *N.J.Super.* 286, 289, 323 *A.*2d 515 (App.Div.), *rev'd on other grounds,* 67 *N.J.* 104, 335 *A.*2d 56 (1974); *State v. Buck,* 94 *N.J.Super.* 84, 88, 226 *A.*2d 840 (App.Div.1967)). Rather, we viewed the proposed taking for a public roadway to be a valid public use despite its benefit to Nordan. *Ibid.* (citing *N. Baptist Church v. Mayor and Common Council of Orange,* 54 *N.J.L.* 111, 113, 22 *A.* 1004 (Sup.Ct.1891) ("Highways are conceded to be, and manifestly are, matters of public concern; and hence, the condemnation of property for streets, alleys and public ways is undeniably for a public use."

(quotation marks and citation omitted))). We thus reinstated the judgment of the Law Division in favor of West Orange. *Id.* at 580, 800 *A.*2d 86.

In October 2005, the parties entered in to a Consent Order dismissing the condemnation proceeding. On January 30, 2006, Associates filed a notice of motion seeking: a determination that West Orange had abandoned its condemnation of Associates' property; dismissal of West Orange's complaint; and an order for payment of costs, disbursements, fees, and expenses incurred by Associates, totaling $402,476.82. On June 8, 2006, the trial judge entered an order that deemed West Orange to have abandoned its condemnation of Associates' property; dismissed West Orange's complaint with prejudice; and awarded Associates fees and costs.

In calculating the award, the judge determined that the condemnation action began on July 11, 1995, the date on which the ordinance identified Associates' property as a target for condemnation; that Associates could be awarded fees from that date; and that the award of fees was subject to the factors set forth in *RPC* 1.5(a), including an assessment of the "success" of Associates' efforts under *RPC* 1.5(a)(4). The judge then identified particular reductions: fees that were not substantiated; those that were duplicative; those incurred for research regarding non-compensable issues, such as attorneys' fees; and fees that were a direct result of a change in counsel. She also disallowed fees for the prerogative writs action challenging the Nordan development and fees incurred at planning board meetings.

In connection with Associates' claim on the issue of "public purpose," she declared:

> Entries from 2/11/98 through 12/21/02 totaling $28,622.72 cover the fees incurred in the defense of the condemnation complaint. The fees and costs incurred were attributable to the ultimately unsuccessful challenge based on the concept that private development does not constitute a public use. The issues were complex and novel. The challenge resulted in two reported decisions. Nevertheless, the theory was unsuccessful and the taxpayers cannot be made to bear the full costs of these fees. Since there is no suggestion that the challenge was brought in bad faith and the novel issue was squarely presented by the facts of this case, 25% of

these fees are awarded. The reduction therefore totals $21,467.04, leaving an allowable fee of $7,155.68.

As a result of those reductions, the judge awarded Associates fees of $154,721.56.

Associates appealed and the Appellate Division affirmed in part and reversed in part. *Twp. of W. Orange v. 769 Assoc., LLC (769 Associates III)*, 397 *N.J.Super.* 244, 256, 936 *A.2d* 1023 (App.Div. 2007). The panel held that "in the context of an abandonment, the right to recover costs and counsel fees is not contingent to any degree upon the success of the property owner's defense strategy," thus obviating application of *RPC* 1.5(a)(4). *Id.* at 246, 936 *A.2d* 1023. In addition, the panel held that "to qualify for reimbursement under *N.J.S.A.* 20:3–26(b), the costs incurred by the property owner must have occurred within the 'four corners' of the condemnation action." *Id.* at 247, 936 *A.2d* 1023 (emphasis omitted). Indeed, the panel found the language of *N.J.S.A.* 20:3–26(b) to be unambiguous in that regard, and declared unwarranted the award of any fees incurred prior to the filing of the complaint. *Id.* at 251, 936 *A.2d* 1023.

The effect of the panel's conclusion in respect of the second issue significantly diminished the amount of fees to which Associates was entitled. However, the panel refused to allow West Orange to benefit from the ruling because it had not filed a cross-appeal. *Id.* at 253 n.1, 936 *A.2d* 1023. Ultimately, the Appellate Division awarded Associates fees of $300,546.87, which included the pre-complaint fees it had declared improperly awarded by the trial judge, as well as fees the panel held were improperly reduced based on Associates' lack of success. *Id.* at 256, 936 *A.2d* 1023. We granted West Orange's petition for certification, 195 *N.J.* 419, 949 *A.2d* 847 (2008), and now reverse.

## II.

West Orange argues that the Appellate Division erred in concluding that it could not benefit from the law it enunciated in the opinion because it failed to file a cross-appeal; in expressly

disregarding *RPC* 1.5(a)(4) in its analysis of the reasonableness of attorneys' fees; and in reversing the reduction of certain attorneys' fees based on the mistaken finding that the trial judge had reduced those fees pursuant to *RPC* 1.5(a)(4), when in fact they were reduced pursuant to *RPC* 1.5(a)(1).

Associates counters that West Orange is not entitled to relief because it failed to file a cross-appeal; that *RPC* 1.5(a)(4) is not relevant to consideration of a mandatory fee award under *N.J.S.A.* 20:3–26(b); that the Appellate Division erred in its ruling regarding the triggering date for an award of fees; and that the Appellate Division correctly reversed the fee reductions under *RPC* 1.5(a)(4).

## III.

"Eminent domain is the awesome power of the sovereign to take property for public use without the owner's consent." *Hous. Auth. of New Brunswick v. Suydam Investors, LLC,* 177 *N.J.* 2, 6, 826 *A.*2d 673 (2003) (citing 1 *Nichols on Eminent Domain* § 1.11 at 1–7 (Sackman ed., 3d ed. 2002)). As we observed in *Suydam, supra,* eminent domain is informed by two separate legal doctrines: the right of the State to take private property for the public good, which arises out of the necessity of government, and the obligation to make just compensation, which stands upon the natural rights of the individual, guaranteed as a constitutional imperative. 177 *N.J.* at 7, 826 *A.*2d 673 (citing 1 *Nichols, supra,* § 1.11 at 1–10; *U.S. Const.* amend. V; *N.J. Const.* art. I, ¶ 20).

The Eminent Domain Act sets forth the procedural framework within which the competing interests in a condemnation case are to be resolved. The statute details when and how a condemnation is to be commenced and continued, including, among others, provisions governing the filing of a complaint, *N.J.S.A.* 20:3–8; service of process, *N.J.S.A.* 20:3–9; imposition of a *lis pendens,* *N.J.S.A.* 20:3–10; the appointment of commissioners, *N.J.S.A.* 20:3–12(b); hearings, *N.J.S.A.* 20:3–12(c)–(e); the setting of com-

pensation, *N.J.S.A.* 20:3–12(g); appeals, *N.J.S.A.* 20:3–13; the declaration of taking, *N.J.S.A.* 20:3–17; the vesting of title, *N.J.S.A.* 20:3–19; deposits, *N.J.S.A.* 20:3–18; abandonment, *N.J.S.A.* 20:3–35 to –36; counsel fees, *N.J.S.A.* 20:3–26; and interest, *N.J.S.A.* 20:3–31 to –32.

Included within that scheme is the mandate that a condemnor engage in bona fide negotiations with the owner of real property *prior* to filing a complaint. *N.J.S.A.* 20:3–6 provides:

> Whenever any condemnor shall have determined to acquire property pursuant to law, including public property already devoted to public purpose, but cannot acquire title thereto or possession thereof by agreement with a prospective condemnee, whether by reason of disagreement concerning the compensation to be paid or for any other cause, the condemnation of such property and the compensation to be paid therefor, and to whom payable, and all matters incidental thereto and arising therefrom shall be governed, ascertained and paid by and in the manner provided by this act; provided, however, that no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules. Prior to such offer the taking agency shall appraise said property and the owner shall be given an opportunity to accompany the appraiser during inspection of the property.

The purpose of *N.J.S.A.* 20:3–6 is "to encourage public entities to acquire property without litigation[,] ... thereby saving both the public and the condemnee the expense and delay of court action." *County of Morris v. Weiner,* 222 *N.J.Super.* 560, 565, 537 A.2d 752 (App.Div.) (citing *Borough of Rockaway v. Donofrio,* 186 *N.J.Super.* 344, 353–54, 452 A.2d 694 (App.Div.1982)), *certif. denied,* 111 *N.J.* 573, 546 A.2d 501 (1988).

At issue in this case is *N.J.S.A.* 20:3–26(b), which provides for the award of counsel fees where a court declares that the condemnor cannot acquire the property by condemnation, or where the condemnation action is abandoned by the condemnor. That provision does not allow counsel fees to be awarded to a condemnee who "wins" a valuation contest, for example, by obtaining greater

recompense for the property than the public entity had offered. Indeed, the Legislature considered and rejected such a rule. A.B. 504, 194th Leg., 1st Sess. § 27 (N.J. 1970) (as introduced on Feb. 9, 1970). Although the legislative history of the counsel-fee provision is unrevealing, it seems likely to us that its purpose is twofold: to make the condemnee whole in respect of fees reasonably incurred in defense of the condemnation proceedings, and to encourage care on the part of the condemnor in exercising its "awesome power." That is the backdrop against which this case will be analyzed.

## IV.

Our first inquiry involves the trial judge's determination that "[a] condemnation action does not begin with the filing of the condemnation complaint," but at the point at which an ordinance identifies property as the target of eminent domain—in this case, July 11, 1995. It was from that date that the trial judge calculated fees incurred by Associates under *N.J.S.A.* 20:3–26(b). The Appellate Division disagreed, declaring that a condemnation "action" begins with the filing of the condemnation complaint, in this case, January 14, 1998, and thus an award of fees incurred prior thereto is not within the contemplation of the statute. *769 Associates III, supra,* 397 *N.J.Super.* at 247, 936 *A.*2d 1023.

*N.J.S.A.* 20:3–26(b) provides for an award of fees if the condemnation "action" is abandoned. "Action" is defined in the statute as a "legal proceeding" in which:

(1) property is being condemned or required to be condemned;

(2) the amount of compensation to be paid for such condemnation is being fixed;

(3) the persons entitled to such compensation and their interests therein are being determined; and

(4) all other matters incidental to or arising therefrom *are being adjudicated.*

[*N.J.S.A.* 20:3–2(g) (emphasis added).]

The statute goes on to establish exactly when a condemnation "action" begins:

The action shall be instituted by filing of a verified complaint in form and content specified by the rules and shall demand judgment that [the] condemnor is duly

vested with and has duly exercised its authority to acquire the property being condemned, and for an order appointing commissioners to fix the compensation required to be paid.
[*N.J.S.A.* 20:3–8.]

Thus, as the Appellate Division properly recognized, for an abandonment to take place under *N.J.S.A.* 20:3–26(b), a condemnation complaint must have been filed; otherwise there would be no "action" to abandon. *See 769 Associates III, supra,* 397 *N.J.Super.* at 250–51, 936 *A.*2d 1023. In other words, as Associates concedes, there can be no award of fees, regardless of the length and intensity of the negotiations, if the condemnor chooses not to file a complaint. Under that scheme, a condemnor can engage in negotiations with many property owners in connection with the same project without being liable for the fees incurred by the owners. It is only upon the filing of the action against a particular property owner that the fee provision comes into play. The question presented here is whether pre-action fees that could not be recovered in the absence of a complaint may be awarded if the complaint is, in fact, filed and the action ultimately abandoned.

We return to the words of the statute: "[I]f the condemnation action is abandoned by the condemnor, then the court shall award ... such sum as will reimburse such owner for his reasonable costs, disbursements and expenses actually incurred, including reasonable attorney, appraisal, and engineering fees." *N.J.S.A.* 20:3–26(b). The dueling interpretations of the trial judge and appellate panel each find sustenance in the words of the Act.

Although the question is an exquisitely close one, we conclude that the trial judge was nearer to the mark. We take our lead from the language of the statute. Although plainly requiring an "action" to exist and to be abandoned in order for fees to be awarded, the Legislature did not similarly limit the award to fees incurred "in the action." Rather, it allowed an award of such fees that are "actually incurred" and "reasonable."

As a general rule, when " 'the Legislature has carefully employed a term in one place and excluded it in another, it should not be implied where excluded.' " *Higgins v. Pascack Valley Hosp.,*

158 *N.J.* 404, 419, 730 *A.*2d 327 (1999) (quoting *GE Solid State, Inc. v. Div. of Taxation,* 132 *N.J.* 298, 308, 625 *A.*2d 468 (1993)). We are thus loath to superimpose a restriction on *N.J.S.A.* 20:3–26(b) that the Legislature itself eschewed. Rather, we conclude that by imposing only the "actually incurred" and "reasonable" standards, the Legislature intended to expand the category of awardable fees to include those reasonably incurred in the mandatory negotiation period that led up to the actual filing of a complaint. The Legislature was obviously aware that in order for a property owner to engage in such negotiations it would likely have to retain a lawyer, who in turn would retain an appraiser and/or engineer whose work would ultimately be used if a complaint was filed. By not restricting fees to those incurred "in the action," the Legislature signaled its intention to include the pre-complaint fees it mandated within the potentially awardable category.

In short, we agree with the trial judge who concluded that reasonable fees actually incurred as a direct result of the public entity's formal action targeting Associates' property (the ordinance of July 11, 1995) were reimbursable once the condemnation complaint was filed and later abandoned. That reading furthers the Legislature's intent to return the condemnee to the position in which it would have been in had its property never been targeted.

## V.

We turn then to the method for calculating the fees. *Rule* 4:42–9(a) provides in relevant part that "[n]o fee for legal services shall be allowed in the taxed costs or otherwise" except in specifically delineated circumstances. Among those are cases "where counsel fees are permitted by statute." *R.* 4:42–9(a)(8).

As we have said, *N.J.S.A.* 20:3–26(b) provides that when a condemnor abandons a condemnation action, it *shall* reimburse the condemnee "for his reasonable ... expenses actually incurred, including reasonable attorney, appraisal, and engineering fees."

Thus, there is a statute authorizing fees and it is clear, as the trial judge and the Appellate Division held, that Associates was entitled to an award under *Rule* 4:42–9. It is similarly evident, as both the trial judge and the Appellate Division recognized, that under the statute only "reasonable" fees could be awarded.

█ *Rule* 4:42–9(b) sets forth the procedure for calculating a fee: "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by RPC 1.5(a)." *RPC* 1.5(a), in turn, prescribes that "[a] lawyer's fee shall be reasonable." Among the factors to be considered in determining the reasonableness of a fee are the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent.

[*RPC* 1.5(a)(1)-(8).]

The list is not exhaustive and all factors will not be relevant in every case. *See, e.g., In re Bloomer,* 37 *N.J.Super.* 85, 94, 117 A.2d 17 (App.Div.1955) (setting forth factors bearing on reasonableness of attorneys' fees in estate cases).

The parties do not quarrel over the general applicability of *RPC* 1.5. The bone of contention here is *RPC* 1.5(a)(4), which prescribes that in determining the reasonableness of a fee, the court should consider "the amount involved and the results obtained." The Appellate Division ruled that the trial judge erred in considering *RPC* 1.5(a)(4) and in reducing requested fees because the application of *RPC* 1.5(a)(4) would run afoul of what the panel called the "automatic and absolute" right to reimbursement under the eminent domain statute. *769 Associates III, supra,* 397

*N.J.Super.* at 255, 936 *A.*2d 1023. In support of that conclusion, Associates argues that under the statute, the "amount involved" is irrelevant and the "results obtained" element is already satisfied when the condemnation action is declared to be beyond the public entity's power or abandoned, and thus no further consideration should be given to it.

West Orange counters that our case law has rejected that view in analogous situations, such as under the New Jersey Consumer Fraud Act, which also provides for mandatory fee shifting. *N.J.S.A.* 56:8–19. According to West Orange, like *N.J.S.A.* 20:3–26(b), that statute grants an automatic right to reimbursement, yet this Court, and other New Jersey courts, still assess the results obtained under *RPC* 1.5(a)(4). *See, e.g., Furst v. Einstein Moomjy, Inc.,* 182 *N.J.* 1, 23, 860 *A.*2d 435 (2004) ("[A] trial court should decrease the lodestar if the prevailing party achieved limited success in relation to the relief he had sought." (citing *Rendine v. Pantzer,* 141 *N.J.* 292, 336, 661 *A.*2d 1202 (1995))); *Branigan v. Level on the Level, Inc.,* 326 *N.J.Super.* 24, 31, 740 *A.*2d 643 (App.Div.1999) ("[A]long with other factors, courts must look at the level of success achieved in the litigation." (citing *Rendine, supra,* 141 *N.J.* at 336, 661 *A.*2d 1202)).

 From those cases, West Orange first argues that *RPC* 1.5(a)(4) should be read to deny Associates fees altogether because its defensive strategies were not the catalyst that brought about the abandonment. Rather, West Orange claims to have given up the pursuit of Associates' property because the land was no longer needed as an access route. In our view, the Appellate Division properly concluded that when a condemnation is abandoned, the right to recover fees is absolute and is not contingent upon the "success" of the property owner's various defense strategies. Indeed, the Legislature has declared that the abandonment itself is the trigger; it did not condition an award on an assessment of whether the condemnee's defensive moves actually precipitated the abandonment. Nor did it provide an exception for a case in which the abandonment was caused by facts entirely external to

the defense of the case, obviously recognizing that such an exception would swallow the rule and result in a storm of litigation in every instance.

■ Alternatively, West Orange argues that *RPC* 1.5(a)(4) requires the condemnation litigation to be broken down into each of its constituent parts and fees denied for any strategic move by Associates that was not "successful," for example, any motion that was denied. Again, we disagree. Under *RPC* 1.5(a)(4), when the court compares the "amount involved" and "results obtained," it does so for the purpose of a proportionality reduction in fees where some or many of the plaintiffs' substantive *claims* are ultimately unsuccessful. *Hensley v. Eckerhart*, 461 *U.S.* 424, 436–37, 103 *S.Ct.* 1933, 1941, 76 *L.Ed.*2d 40, 52 (1983) (providing counsel-fee-award framework where plaintiff has limited success); *Packard–Bamberger & Co., Inc. v. Collier*, 167 *N.J.* 427, 445–46, 771 *A.*2d 1194 (2001) (requiring reduction in fee award due to rejection of substantial portion of plaintiff's claims); *N. Bergen Rex Transp., Inc. v. Trailer Leasing Co.*, 158 *N.J.* 561, 573–74, 730 *A.*2d 843 (1999) (holding proportionate success as factor in awarding fees).

■ That model was never intended to require an assessment of the success or failure of each of the moving parts in a defense strategy. Rather, it is limited to a consideration of the ultimate substantive outcome in a case relative to the claims that were originally advanced. In short, we do not view *RPC* 1.5(a)(4) as authority to deny fees solely on the basis that a particular initiative did not carry the day.

That is certainly not to suggest that a condemnee whose case is abandoned is entitled to all of the counsel fees incurred in the litigation from the negotiation phase forward. First, as we have said, the fees must be actually incurred as a direct result of the public entity's exercise of its condemnation power. It is for that reason that Associates concedes that the fees for the prerogative writs action regarding the Nordan development and those related to planning board meetings were not recoverable as they were

collateral and not directly related to West Orange's efforts to condemn Associates' property.

Second, and most importantly, the fees must be reasonable. In making a reasonableness determination, courts should apply all other relevant aspects of *RPC* 1.5. Those include, for example, the time and labor required; the novelty and difficulty of the questions involved; special skills needed to perform the service properly; any inhibition on the attorney's ability to accept other work; customary fees for similar services; time constraints; the nature of the professional relationship; and the experience and reputation of the lawyer involved. *RPC* 1.5(a)(1)-(3), (5)-(7).

Moreover, as in every case, the court should look at the substance of the work performed. Pivotal to such an inquiry is whether the defenses interposed to the condemnation were those that a reasonably skilled attorney would have advanced. Thus, as the trial judge held, the court need not award fees to a condemnee for advancing frivolous defenses, or for taking repetitive or delaying actions, or for actions necessitated by a lawyer's mistakes, or for those that are not legitimate responses to a condemnation complaint. In making such assessments, the trial judge may look to the success of defendant's strategies, not as a bright line rule, but as one measure of what a reasonably skilled attorney would have done.

In that context, although successful strategies are by their very nature appropriate legal responses, the converse may not be true. A good example of that is the issue raised by Associates over the definition of "public purpose." Although Associates did not prevail in this Court, its claim was accepted at the appellate level, and we viewed the issue as unresolved and important enough to grant West Orange's petition for certification, which Associates was required to defend. There is nothing about *RPC* 1.5 that would necessarily disallow the fees connected with those proceedings; a strategy need not "succeed" in order to be a reasonable response to a condemnation complaint.

■ Here, in awarding fees, the trial judge relied, among other things, on Associates' lack of success on the appeal. Because it is not clear how much she discounted the appeal fees by resort to *RPC* 1.5(a)(4), or whether she limited her success analysis to the narrow purpose we have approved, we are remanding the case to her for a review of the award. Further, because the parties continue to disagree over whether the judge excluded certain fees based on *RPC* 1.5(a)(1) or (a)(4), the judge should clarify that issue on remand. Obviously, any calculation will still be subject to the restrictions previously imposed by the trial judge. By way of example, but not limitation, unsubstantiated bills, duplicative work, and research regarding counsel fees are not recoverable.

## VI.

Finally, West Orange challenges the fact that the Appellate Division made substantive rulings in its favor, but refused to accord it the benefit of those rulings because it failed to file a cross-appeal. As a result of our disposition of the case that issue is moot. Nevertheless, we add the following.

Our courts have recognized that if an issue is squarely presented, relief need not be withheld simply because it would inure to the benefit of a non-appealing party. The key to determining if an issue is before the court is whether it is intertwined with, related to, or necessary to the disposition of the question on which the appeal has been taken. *See, e.g., Rosenau v. City of New Brunswick,* 51 *N.J.* 130, 135, 238 *A.2d* 169 (1968) (considering issue, even though not appealed, because it was intertwined with issue on which certification was granted); *Wolfersberger v. Borough of Point Pleasant Beach,* 305 *N.J.Super.* 446, 453, 702 *A.2d* 1294 (App.Div.1996) (granting relief to Point Pleasant because issue was before court "by virtue of plaintiff's appeal and both parties have presented all of the arguments which they would have urged if a cross-appeal had been filed"), *aff'd,* 152 *N.J.* 40, 702 *A.2d* 1284 (1997).

Plainly before the Court in this case was a single global question: What counsel fees are recoverable by a condemnee when a condemnation has been abandoned? To the extent that the resolution of that question inured to the benefit of West Orange, relief should have been afforded by the court, irrespective of the absence of a cross-appeal.

## VII.

The judgment of the Appellate Division is reversed. The matter is remanded to the trial judge for reconsideration of the fee award in accordance with the principles to which we have adverted.

*For reversal and remandment*—Chief Justice RABNER and Justices LONG, LaVECCHIA, ALBIN, WALLACE and RIVERA–SOTO—6.

*Opposed*—None.