**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4043-23

AA GLASS INDUSTRIES, LLC,

      Plaintiff-Appellant/
      Cross-Respondent,

v.

SEASIDE OCEAN TERRACE, LLC,
L AND J ENTERPRISES 1, LLC,
T & K MARINE CONSTRUCTION,
INC., ARCADIA ARCHITECTURAL
PRODUCTS, INC., GENERAL
GLASS, INC., OLD CASTLE
BUILDING ENVELOPE, A PLUS
INSULATION SPECIALISTS, LLC,
OMEGA POOL STRUCTURES,
INC., JERRY CAVALIER, LANCE
SCHONER and CARA SCHONER,

      Defendants,

and

OLD CASTLE BUILDING ENVELOPE,

      Defendant-Third Party Plaintiff,

and

AA GLASS INDUSTRIES, LLC, SEASIDE
OCEAN TERRACE, LLC, L AND J
ENTERPRISES 1, LLC, T&K MARINE
CONSTRUCTION INC., ARCADIA
ARCHITECTURAL PRODUCTS INC.,
GENERAL GLASS, INC., SOLAR
INNOVATIONS, INC., A PLUS
INSULATION SPECIALISTS, LLC,
and OMEGA POOL STRUCTURES, INC.,

     Third-Party Defendants,

and

SOLAR INNOVATIONS, INC.,

     Defendant-Respondent/
     Cross-Appellant.

_____

     Submitted December 9, 2025 – Decided March 2, 2026

     Before Judges DeAlmeida and Torregrossa-O'Connor.

     On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2291-21.

     Hegge & Confusione, LLC, attorneys for appellant/ cross-respondent AA Glass Industries, LLC (Michael Confusione, of counsel and on the briefs).

     Donnelly Minter & Kelly, LLC, attorneys for respondent/cross-appellant Solar Innovations, Inc. (Jared J. Limbach, of counsel and on the briefs).

PER CURIAM

A-4043-23

After lengthy multi-party litigation in this contractor dispute arising from a commercial construction project, AA Glass Industries, LLC (AA Glass) appeals from a series of Law Division orders collectively granting summary judgment in favor of Solar Innovation, Inc. (SI), against AA Glass for breach of its contract with SI, and awarding SI $40,235.18 as full payment for its work, $15,088.25 in finance charges, and $14,082.31 in counsel fees. SI cross-appeals contending the court erred in calculating the counsel fee award. We affirm the trial court's orders in their entirety.[1]

## I.

## A.

Seaside hired L&J as general contractor to perform construction on its property. L&J subcontracted a portion of the work to AA Glass, which, in turn

---

[1] SI's complaint was consolidated with AA Glass's August 2, 2021 complaint against SI; Seaside Ocean Terrace, LLC (Seaside); L&J Enterprises, LLC (L&J); and various other defendants who are not parties to this appeal to foreclose on a construction lien and for breach of contract. SI filed its own complaint, in part asserting a breach of contract claim against AA Glass. Our opinion addresses only the trial court's grant of summary judgment on SI's claims against AA Glass, and the accompanying fee award. Thus, we need not recount the protracted procedural history of the various related claims which are not pertinent to the issues before us.

A-4043-23

subcontracted to SI to manufacture and deliver folding glass walls[2] for installation in the construction.

The agreement between AA Glass and SI included three distinct parts material to this appeal. Specifically, a "Payment Terms Addendum" addressed the contingency of AA Glass's "Default of Payment," providing all payment terms would be "revoked and revert to [SI's] standard payment terms . . . upon any payment default by" AA Glass. It further provided SI could charge additional fees "if an order is delayed due to late payment," and AA Glass would "be responsible for all reasonable attorney fees and other costs incurred in collecting all past due balances." The addendum expressly provided for calculation of counsel fees, stating, "Attorney fees of 35% of the outstanding balance or $250 per hour shall be conclusively presumed reasonable but shall not preclude SI from recovery of higher amounts if reasonable."

The addendum section also contained a mechanics lien provision acknowledging SI may exercise its right to pursue a mechanics lien. Further, the contract provided AA Glass would "be responsible for all reasonable counsel fees, costs, interest, and charges incurred in pursuing the mechanics lien, even if those items are not recoverable against the owner."

---

[2] The parties at times reference the glass walls as "doors."

A-4043-23

The second relevant part of the parties' agreement set the proposed price for the contract at $60,052.51. This was established by written proposal, signed and returned by AA Glass. The proposal incorporated by reference the controlling terms and conditions located on SI's company website.

Those terms again addressed payment default by the "buyer," here AA Glass, providing, "Buyer will be responsible for a finance charge of 1.50% per month on all past due amounts. The minimum monthly finance charge will be $10 per month." Also, the general terms provided for SI's securing a mechanics lien and confirmed:

> Buyer will be responsible for all reasonable attorney fees and other costs incurred in collecting any and all past due balances. Attorneys['] fees of 35% of the outstanding balance or $250 per hour shall be conclusively presumed reasonable but shall not preclude SI from recovery of higher amounts if reasonable.

The terms placed responsibility on AA Glass for installation, inspection of the product, and raising timely defect claims. In pertinent part, the terms included the following:

> BUYER INSTALLATION: Unless otherwise specifically provided, the Buyer (or its contractor) has full responsibility for the installation of the goods. Upon request, SI may provide contact information for independent installers who have experience in installing SI's products; however, SI shall not endorse,

5

or be liable for, any work provided by independent installers. . . .

Buyer assumes all responsibility for movement of SI's product upon delivery, unless communicated otherwise, in writing, by SI Management. Buyer is advised to consult with a trained professional for purposes of lifting and moving SI product, particularly pre-glazed units. Lifting product using improper contact points or methods can result in damage to SI's product. Buyer assumes all responsibility for any such damage. SI can have no responsibility or liability for damage to product occurring after delivery.

. . . .

To the maximum extent permitted by law, Buyer shall defend, indemnify and hold SI harmless from any and all claims or causes of action relating to the installation by others of the product of SI. This duty to indemnify shall apply whether the product of SI was installed through a contractor hired by Buyer or any other party (including any independent installer whose name was provided by SI). Buyer's duty to indemnify SI shall apply to any and all claims or causes of action for bodily injury, property damage, product failure, breach of contract or otherwise made by any third party that alleges that the damages were caused, in whole or in part, by the manner of installing the product of SI. Buyer must provide independent counsel, at Buyer's expense, to defend SI from all claims in any lawsuit or claim in which it is asserted that the manner of installation of SI's products by others caused the damages.

. . . .

6

BUYER'S INSPECTION OF GOODS:  Buyer shall inspect the goods ordered not later than five . . . business days after receipt.  If the goods do not conform to the contract between Buyer and SI or are damaged or defective, Buyer shall notify SI in writing of such nonconformity or defect (and supply accompanying pictures of defect or nonconformity) no later than five . . . business days after delivery and afford SI a reasonable opportunity to inspect the goods.  Buyer assumes all risk of untimely notification to SI of non-conforming goods or goods damaged during transport that do not meet the notification requirements of the carrier's claims procedures. . . . Every claim on account of defective or nonconforming goods or due to any other cause shall be deemed waived by Buyer, unless made to SI in writing within five . . . business days of Buyer's receipt of the goods to which such claim relates.  Failure to give such notice, including all supporting documentation and photographs, shall be conclusively deemed acceptance of the good by the Buyer.

Pursuant to the parties' agreement, SI manufactured the folding glass walls ordered by AA Glass, and AA Glass paid SI's initial $19,817.33 invoice on April 8, 2021, prior to shipment of the walls.  On June 2, 2021, SI issued to AA Glass two additional invoices for $23,429.61 and $16,805.57, comprising the remaining total contract price.  Four days later, SI shipped and AA Glass accepted delivery of the walls.  SI delivered the glass walls in crates and did not remove them from their packaging.

Subsequently, after installation of the glass, L&J found "all the doors leaked, had spaces in between, allowing water to leak in."  AA Glass never paid SI's remaining two invoices, resulting in an outstanding balance of $40,235.18.  SI therefore filed a lien against the property on August 13, 2021.

B.

AA Glass's complaint followed, and SI filed its own complaint, alleging AA Glass breached their contract and the duty of good faith and fair dealing, as SI performed under the contract, but AA Glass "failed to pay the full amount owed under the []contract."  SI further alleged promissory estoppel claims, and sought full payment together with applicable "additional charges including interest, lien fees, counsel fees and costs."

After SI's initial motion for summary judgment was denied, discovery proceeded.  In response to SI's request for admissions, AA Glass conceded:  (1) "AA Glass agreed to pay $60,052.51 to SI in exchange for the manufacture and deliver[y of] a set of custom folding glass walls" to AA Glass; (2) "SI manufactured and delivered the folding glass walls requested by AA Glass"; (3) "[t]he folding glass walls were intact and in good condition when delivered by SI"; (4) "AA Glass accepted the folding glass walls"; (5) "SI was not responsible for installing the folding glass walls"; (6) "SI did not install the folding glass

walls"; and (7) "AA Glass has only paid SI $19,817.33 for the folding glass walls."

SI moved a second time for summary judgment, and the court heard arguments on August 4, 2023. Despite recognizing the complexity of the consolidated case, SI maintained its motion was "a simple breach of contract claim arising from non-payment." AA Glass admitted the terms of the contract were in writing and unambiguous. SI argued it performed fully under the contract by manufacturing and delivering the folding glass walls as detailed in the agreement, the walls "were intact and in good condition when they were delivered by [SI,] AA Glass accepted the folding glass walls without objection," and "AA Glass failed to pay the full contract price."

SI thereafter contended that whether the glass walls "were subsequently damaged during the unloading or the storage process" was a question between L&J and AA Glass, as SI's responsibility terminated upon delivery of the walls, and L&J and AA Glass were responsible for the walls upon delivery. SI argued it did not perform the unloading or storage and was "only responsible for fabricating and delivery." It contended "there was zero evidence in the record to suggest that the doors were not intact or were not in good condition at the time they were delivered. The only thing [it] ha[d] [wa]s deposition testimony

relating to how and when they were unpacked and stored by [L&J] after delivery." SI therefore claimed that "under both Rule 4:22-2 and Rule 4:46-2, it has been completely established and . . . cannot be disputed by [r]ule that those folding glass walls were intact and in good condition when they were delivered by" SI.

SI noted "[t]he only issue that's been raised in opposition to [its] motion concerns the calculation of finance charges payable under the agreement," but the language in the agreement "unambiguous[ly]" provides that AA Glass, as the buyer, was responsible for a one-and-one-half percent finance charge on all past due amounts, and not strictly principal. It argued that due to this clear language, the court "should not make a better deal for AA Glass than the one [it] signed," and, though there is an over $3,000 difference in calculations between the parties, the court should be able to determine the issue based on the undisputed contract language of "all past due amounts."

Concerning SI's request for counsel fees, SI claimed the dispute had been ongoing for two years and that it attempted to "get out of the case" and to "limit AA Glass's exposure on the counsel fees" by submitting its first motion for summary judgment pre-discovery, a year earlier. SI contended AA Glass instead "elected to oppose" SI's first motion and seek additional discovery, which

concluded yielding "no additional information," and AA Glass's admissions have not changed.

In response, AA Glass's counsel stated:

> 99% of the facts that [SI] said, I agree with. There's no way I can dispute them. The only thing, and I put that out there from the deposition testimony of [L&J's representative] is that they're the one that opened it. Was it because of something that happened in transit? Because it was in crates. You couldn't see it, or something as [SI's counsel] said, is something that [L&J] did—being opened—again . . . —I submitted to the fact finder to determine, but I have nothing beyond that.

Regarding the finance charge issue, AA Glass argued the $3,500 difference is a "stretch," and the case law is clear that if SI wanted to compound interest on the past due amounts, it had to first inform AA Glass.

On August 9, 2023, by order and accompanying written decision, the court granted SI's motion for partial summary judgment on its breach of contract claim. The court entered judgment in the amount of $40,235.18 for the outstanding principal balance AA Glass owed to SI, and determined counsel fees and costs would be awarded "in an amount to be determined following submission of an appropriate Certification of Services." The court dismissed as moot SI's additional claims against AA Glass.

The court reasoned SI performed under the specific terms of the contract and AA Glass admitted "the folding glass walls were intact and in good condition when delivered by SI." Thus, the court concluded "any subsequent issues of material fact regarding the installation of the walls are issues between AA [Glass] and L&J. There is no competent evidence presented that SI failed to deliver the product in good condition." The court denied SI's compound interest calculation in favor of a simple interest calculation, citing the parties' contract and concluding "there [wa]s no mention of interest being calculated at a compound rate in the agreement."

Thereafter, SI submitted its request for entry of judgment against AA Glass for $88,145.34, including a newly calculated finance charge for a twenty-five-month period totaling $15,088.25. SI's attorneys certified: their firm's hourly rates varied from "$325 per hour for senior partners, $295 per hour for junior partners, and $215 for all other attorneys," and was consistent with the customary rate for "similar legal services in Ocean County"; they "maintained detailed records of the time spent on this matter," withheld under attorney-client privilege, but available to the court upon request; the time billed "w[as]

necessary and reasonable," incorporating a list of services rendered[3]; and the firm "did everything within [its] power to limit the enforcement costs expended in this matter," but AA Glass's simultaneous suit, SI's first summary judgment motion, discovery, and its second summary judgment motion prolonged litigation and increased accompanying costs to a total of $32,821.91, which SI had paid in full as of this submission.

SI argued, while the contract language provided that thirty-five percent of the outstanding balance or $250 is "conclusively presumed reasonable," the agreement also directed this calculation "shall not preclude SI from recovery of higher amounts if reasonable." It further noted the lodestar for SI's counsel fee application, citing Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372 (2009), and detailed that all of Rule of Professional Conduct (RPC) 1.5(a)'s factors weighed in favor of SI's calculated award.

AA Glass objected to SI's request, asserting the contract terms controlled and provided thirty-five percent of the balance owed would constitute

---

[3]  The certification reflected the amounts billed for each of the three attorneys as well as their respective hours worked and billable rates for the matter: $1,072.50 for 3.5 hours at $325 per hour, $29,028 for 99.4 hours at $295 per hour, and $21.50 for 0.1 hours at $215 per hour. It added reimbursable expenses billed to SI in this matter in the amount of $1,662.99, and $2,090 SI previously paid for mediation services.

A-4043-23

reasonable fees, such that SI's attorneys would be entitled to that amount, constituting thirty-five percent of $40,235.18, or $14,082.31. It averred "[a] total of over 100 hours for a simple collection case seem[ed] excessive," and it was not made aware of "how the costs were calculated."

The court ordered a further breakdown of fees, and SI provided a detailed breakdown of its billing. SI again requested $40,235.18 for the original principal balance, $15,691.78 for finance charges, "$31,752.12 for counsel fees and expenses billed by [their] firm," "$1,212.50 for counsel fees and expenses incurred but not yet billed by [their] firm to SI," and $2,090 for a mediation fee, totaling an award of $90,981.58. In response, AA Glass again argued the $90,981.58 total request "for a principal debt of $40,235.18 . . . is not a reasonable request," and asked the court to enter an award for $14,082.31 or adjust the hourly rate to $250 per hour and "to reduce the number of hours to accurately reflect the time to collect on a simple collection matter."

On November 18, 2023, by order and accompanying written decision, the court awarded SI counsel fees of $14,082.31. Recognizing the parties' arguments and the relevant legal principles, including RPC 1.5(a)'s eight factors, the court deferred to the parties' contract, finding "[t]he parties clearly established a reasonable amount of attorneys' fees as stated in their mutually

14

agreed upon fee shifting provision," which provided for recovery of thirty-five percent of the award or $250 per hour "if that amount were reasonable."  The court stated the following:

> Here, in very strong language, the contract provides that 35% of the outstanding balance is "conclusively presumed reasonable."  Significantly, a judgment was entered in favor of [SI], not after a five[-]day trial, but on a motion for summary judgment. If the matter had gone to trial, counsel fees over and above the "conclusively presumed reasonable" amount may have been justified.  In the discretion of this court, [SI] has not demonstrated they have overcome this very strong language in the contract and [are] entitled to counsel fees in excess of that provision.  That is, it would be unreasonable to require AA [Glass] to pay anything more than the 35% of the outstanding balance under the totality of the circumstances presented.

## II.

AA Glass now appeals entry of judgment in favor of SI, and SI cross-appeals the court's counsel fee award.

## A.

AA Glass argues genuine issues of fact precluded summary judgment.  In particular, AA Glass alleges L&J's claim the walls leaked "warranted denial of summary judgment on the ground that there is an issue of material fact about [SI]'s performance of its own obligation, under the contract, to manufacture[]

15

and deliver to the work site" two glass doors compliant with the specifications in the parties' contract.

Additionally, for the first time on appeal, AA Glass argues SI did not comply with the implied warranty of merchantability, as required under Pennsylvania law governing the contract. It contends, as a result, SI's alleged noncompliance creates "a material issue with the amount of damages to which [SI] is entitled as well because of the leaking and water issues," maintaining a jury can reduce the amount owed to SI based on SI's failure to comply with the specifications.

SI argues AA Glass's arguments on appeal differ from those raised before the trial court and should be rejected. Alternatively, SI asserts AA Glass's admissions defeat both its prior and newly-minted claims that SI failed to comply with its obligations. It contends Pennsylvania law nonetheless also "prohibits the belated claim now asserted by AA Glass" alleging now approximately four years after their delivery the walls were nonconforming, because AA Glass made admissions that it "accepted the folding glass walls without objection."

"In reviewing a grant of summary judgment, [this court] review[s] the decision de novo, applying the same standard as the trial court." <u>L.A. v. N.J.</u>

A-4043-23

Div. of Youth & Fam. Servs., 217 N.J. 311, 323 (2014). An appellate court "must determine whether the facts, when viewed most favorably to the non-moving party, establish genuinely disputed issues of fact sufficient to defeat summary judgment." Hinton v. Meyers, 416 N.J. Super. 141, 146 (App. Div. 2010) (citing Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 523 (1995)).

To prevail on a breach of contract claim,

> [o]ur law imposes on a plaintiff the burden to prove four elements: first, that "the parties entered into a contract containing terms"; second, that "plaintiffs did what the contract required them to do"; third, that "defendants did not do what the contract required them to do," defined as a "breach of contract"; and fourth, that "defendants' breach, or failure to do what the contract required, caused a loss to the plaintiffs."
>
> [Goldfarb v. Solimine, 245 N.J. 326, 338 (2021) (alteration in original) (quoting Globe Motor Co. v. Igdalev, 225 N.J. 469, 482 (2016)).]

Applying the undisputed facts to this legal standard, we conclude the trial court properly granted summary judgment in favor of SI.

Preliminarily, we reject AA Glass's belated challenges to the summary judgment determination based on Pennsylvania law. We recognize the parties' agreement contains a provision indicating Pennsylvania law governs the contract. However, it appears the trial court applied New Jersey law to the issues raised under the contract without objection by the parties, and no claim has been

17

raised on appeal challenging the law the trial court applied to the case. Accordingly, we decline to address AA Glass's new claims, which were never presented or considered before the trial court. See In re Kovalsky, 195 N.J. Super. 91, 99-100 (App. Div. 1984) (quoting Hous. Auth. of Newark v. Sagner, 142 N.J. Super. 332, 337 (App. Div. 1976)) ("Absent compelling reasons, 'appellate courts will decline to consider questions or issues not properly presented at the trial level when an opportunity for such a presentation is available.'").

AA Glass's remaining challenge to the trial court's determination fails in view of the undisputed record. It was uncontested the parties entered a valid contract requiring SI to deliver glass walls fitting the specifications and in good condition. AA Glass confirmed SI performed, acknowledging and formally admitting the walls "were intact and in good condition when delivered by SI," AA Glass accepted the walls, which SI was not responsible for installing, and AA Glass did not remit full payment as required under the contract. These admissions, made pursuant to Rule 4:22-2 rendered those facts "conclusively established" for purposes of meeting the breach of contract standard. See R. 4:22-2 ("Any matter admitted under this rule is conclusively established.").

18

Further, AA Glass conceded it did not "object to the condition of the folding glass walls," accepted them, and "SI fully performed its obligations to AA Glass" under the contract terms, to the best of its knowledge. AA Glass's counsel amplified the admission agreeing with "99%" of SI's claims and facts alleged, with "no way [to] dispute them."

AA Glass's sole reliance on L&J's representative's deposition testimony questioning at what point the glass doors were damaged is unavailing. Indeed, the contract language required AA Glass to inspect the walls it received and notify SI within five days or otherwise waive a claim for nonconforming goods; it failed to timely object. Accordingly, we conclude the trial court properly entered summary judgment by finding AA Glass breached its contract with SI and entered judgment for the outstanding balance, plus the interest as provided under the contract.

B.

We next address and reject SI's argument on cross-appeal contending the trial court abused its discretion in awarding counsel fees under the formula set forth in the parties' agreement. SI contends the trial court erred when it "failed to calculate a proper lodestar for the underlying fee award," warranting this court's intervention. It contends the contract's terms were not binding, and the

19

court insufficiently and incorrectly applied RPC 1.5(a)'s factors to assess reasonableness.

Appellate courts review an award of counsel fees and costs for an abuse of discretion. See Litton Indus., 200 N.J. at 386; Rendine v. Pantzer, 141 N.J. 292, 317 (1995). "An appellate court may reverse a trial court's award of fees and costs . . . when the court's decision 'was based on irrelevant or inappropriate factors, or amounts to a clear error in judgment.'" Hansen v. Rite Aid. Corp., 253 N.J. 191, 212 (2023) (quoting Garmeaux v. DNV Concepts, Inc., 448 N.J. Super. 148, 155-56 (App. Div. 2016)).

"In determining the reasonableness of an attorneys' fee award, the threshold issue 'is whether the party seeking the fee prevailed in the litigation.'" Litton Indus., 200 N.J. at 386 (quoting N. Bergen Rex Transp. v. Trailer Leasing Co., 158 N.J. 561, 570 (1999)). The prevailing "party must establish that the 'lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a necessary and important factor in obtaining the relief.'" Ibid. (alteration in original) (quoting N. Bergen, 158 N.J. at 570).

"The next step in determining the amount of the award is to calculate the 'lodestar,' which is that number of hours reasonably expended by the successful party's counsel in the litigation, multiplied by a reasonable hourly rate." Ibid.

(quoting Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 21 (2004)). RPC 1.5(a) prescribes that "[a] lawyer's fee shall be reasonable," and sets forth relevant factors in determining the reasonableness of attorneys' fees. This "list is not exhaustive and all factors will not be relevant in every case." Twp. of West Orange v. 769 Assocs., LLC, 198 N.J. 529, 542 (2009).

Here, we discern no abuse of discretion by the trial court in applying the contract's terms to assess counsel fees. New Jersey courts permit a prevailing party to recover attorneys' fees "if they are expressly provided for by . . . contract." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 440 (2001). The court identified the relevant law, including RPC 1.5, but yielded to the parties' mutually settled language setting what they concurred constituted "reasonable" attorneys' fees, which it was permitted to do. See Ctr. Grove Assoc. v. Hoerr, 146 N.J. Super. 472, 474 (App. Div. 1977) (recognizing "generally, a contract which permits an aggrieved party to recover fixed or 'reasonable' attorney[s'] fees as part of any damages is enforceable unless some larger public policy mandates a contrary result" (quoting Alcoa Edgewater No. 1 Fed. Credit Union v. Carroll, 44 N.J. 442, 448 (1965))); see also Belfer v. Merling, 322 N.J. Super. 124, 141 (App. Div. 1999) (recognizing that a contract

21

can permit recovery of reasonable attorneys' fees, but "any fee arrangement is subject to judicial review as to its reasonableness").

The trial court gathered detailed information concerning the legal work performed, the rates, and the needs of the case. In particular, the court emphasized the clear and express language of the contract, and looked to the reasonableness of SI's request for fees above the amount resulting from application of the agreed-upon formula. The court stated its reasons, placing heavy emphasis on the resolution following "not after a five[-]day trial, but on a motion for summary judgment." It found the percentage of fees disproportionate to the amount of SI's award. According deference to the trial court and recognizing fee awards should be overturned "only on the rarest occasions," Hansen, 253 N.J. at 212 (quoting Rendine, 141 N.J. at 317), we will not disturb the court's determination, which was grounded in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-4043-23