263 N.J. Super. 608 (1993)
623 A.2d 794
EDMUND E. JACOBITTI, PLAINTIFF-RESPONDENT/CROSS-APPELLANT,
v.
STELLA MARIE JACOBITTI, DEFENDANT-APPELLANT/CROSS-RESPONDENT. EDMUND E. JACOBITTI, PLAINTIFF-APPELLANT, CROSS-RESPONDENT,
v.
STELLA MARIE JACOBITTI, DEFENDANT-RESPONDENT/CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 5, 1992.
Decided April 27, 1993.
*611 Before Judges J.H. COLEMAN, ARNOLD M. STEIN and CONLEY.
Gail J. Mitchell argued the cause for Stella Marie Jacobitti (Schwartz & Barkin, attorneys; Ms Mitchell and Daniel N. Shapiro on the brief; Ms. Mitchell on the reply briefs).
Albert L. Cohn argued the cause for Edmund E. Jacobitti (Cohn, Lifland, Pearlman, Herrmann & Knopf, attorneys; Mr. Cohn, of counsel; Terri Del Greco, on the briefs and reply briefs).
The opinion of the court was delivered by ARNOLD M. STEIN, J.A.D.
We consolidate these appeals for disposition.
In A-3840-90T1, we affirm the order declaring the parties' antenuptial agreement to be unconscionable and therefore unenforceable. We affirm the judgment of divorce in the award of $75,000 to defendant-wife as equitable distribution, representing her 50% interest in the marital dwelling and determination that the money which defendant withdrew from a joint account and from a money market fund in her own name belonged to her, against which plaintiff was to receive no credit. We modify the alimony and support provisions of the judgment, and remand the matter to the trial judge for the limited purposes which we set forth below.
*612 Finally, in A-1600-91T1, we affirm the order awarding the $60,000 counsel fee to defendant.
The marriage of the parties lasted approximately sixteen years. At the time of trial, plaintiff, a retired physician, was eighty-five years old, apparently in good health. Defendant is nineteen years younger, suffering from progressively deteriorating multiple sclerosis and wheelchair bound.
We review the relevant rulings of the trial judge.
The judge first concluded that the antenuptial agreement was unenforceable because it was unconscionable, in that the divorce would leave plaintiff a wealthy man, and defendant virtually penniless. He also determined that plaintiff failed to completely disclose his worth when the agreement was executed. The agreement stated that plaintiff had "assets in excess of ONE MILLION THREE HUNDRED TWENTY FIVE THOUSAND and 00/100 ($1,325,000.00) DOLLARS with a yearly income in excess of ONE HUNDRED THOUSAND and 00/100 ($100,000.00) DOLLARS" and that defendant had assets "in excess of TWO THOUSAND and 00/100 ($2,000.00) DOLLARS and an income of approximately TWELVE THOUSAND FIVE HUNDRED and 00/100 ($12,500.00) DOLLARS per year." Defendant would receive nothing if the parties were separated or divorced at the time of plaintiff's death. If defendant survived plaintiff while the parties were living in a marital relationship, she would receive $50,000 less any money in a joint bank account or in trust for her benefit. Money in excess of $50,000 in either account would belong to plaintiff's estate. The agreement was amended after marriage to increase defendant's inheritance to $250,000 if the parties were living in a marital relationship at plaintiff's death. The trial judge's factual findings and conclusions are supported by substantial credible evidence in the record. R. 2:11-3(e)(1)(A); Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). His decision is consistent with case law. DeLorean v. DeLorean, 211 N.J. Super. 432, 436-38, 511 A.2d *613 1257 (Ch.Div. 1986) (there must be detailed disclosure of financial worth by parties executing agreement, and enforcement of agreement should not leave one spouse destitute or a public charge); Marschall v. Marschall, 195 N.J. Super. 16, 30-31, 477 A.2d 833 (Ch.Div. 1984).
We affirm the $75,000 equitable distribution award to defendant, representing a 50% interest in the marital dwelling in Maywood. The house was custom built during the marriage for approximately $108,000. Defendant participated in decorating the home. The parties treated the house as if they expected to live there together for the rest of their lives. Defendant also contributed to plaintiff's status in the community, to his medical practice and to the family unit prior to the onset of her debilitating illness. These findings are based upon substantial credible evidence in the record and should not be disturbed. Rova Farms, supra, 65 N.J. at 484, 323 A.2d 495. Considering defendant's contributions to the marriage, a 50% award of the value of the marital dwelling as defendant's equitable share of the marital assets was therefore well within the trial judge's discretion.
Plaintiff contends that the judge arbitrarily fixed the market value of the marital residence at $150,000, without an appraiser's expert testimony to support this figure. See Bowen v. Bowen, 96 N.J. 36, 49, 473 A.2d 73 (1984); Orgler v. Orgler, 237 N.J. Super. 342, 357-58, 568 A.2d 67 (App.Div. 1989). We caution trial judges against fixing market value of real property without the benefit of expert appraisal evidence. Id. at 358, 568 A.2d 67. It is at least partly plaintiff's fault that no appraisal proofs were offered. In any event, it would be an injustice to remand this matter for proof of the marital dwelling's value where so little is at stake. It is inconceivable that the $150,000 value fixed by the trial judge would be off by more than a few thousand dollars. We will not subject the parties to the expense of appraisers' reports, expert testimony and additional legal fees, none of which could substantially alter the *614 market value fixed by the trial court. We therefore affirm the trial judge's ruling fixing the value of the marital dwelling at $150,000, and awarding plaintiff a 50%, or $75,000 interest therein.
There was also substantial credible evidence in the record to support the trial judge's ruling that the money in the parties' joint account and the money market account in defendant's name were gifts from plaintiff to defendant, and that she had a right to withdraw those sums for her own benefit. In re Dodge, 50 N.J. 192, 216, 234 A.2d 65 (1967); Dotsko v. Dotsko, 244 N.J. Super. 668, 674, 583 A.2d 395 (App.Div. 1990).
Defendant contended that her monthly alimony needs were approximately $5,700. The trial judge concluded that these expenses were overstated by $1,400. His final calculations resulted in a $4,200 net monthly alimony award to defendant. We cannot disturb this award. It is based on substantial credible evidence in the record. The trial judge concluded that defendant's $5,700 estimate could not be sustained by the evidence. He found that defendant's testimony was incomplete, inconsistent, vague and confusing, and that she was unable to document many of her asserted anticipated expenses. The judge also found that the supporting testimony of defendant's son, while somewhat better, was nevertheless confusing, frequently "erratic and ill prepared." Neither defendant nor her son was able to produce checks or receipts to support her claimed incurred and necessary expenses. Nevertheless, the trial judge did the best he could with the proofs presented by defendant and came up with the $4,200 monthly alimony award, an amount which is supported by the evidence.
Instead of entering a $4,200 monthly alimony award for defendant in the judgment, the trial judge ordered a trust to be established for the purported purpose of satisfying defendant's alimony requirements. He ordered plaintiff to place $500,000 in trust, "the trustee to be an institution insured by the F.D.I.C." The trustee was required "to pay all income from *615 said trust to Mrs. Jacobitti on a monthly or quarterly basis as an[d] for her alimony during her lifetime." Upon defendant's death, the trust corpus, including undistributed income, was to vest in charities named by plaintiff. The trust corpus could only be invaded for defendant's health care needs which exceeded $1,000 or to pay for the expenses of a nursing home.
The trust in this form was an improper vehicle for securing payment of plaintiff's support obligation to defendant. Nowhere is that $4,200 amount set forth in the judgment even though the judge specifically determined that this amount was necessary to provide for defendant's continuing financial needs. Instead, a monthly or quarterly payment to satisfy these financial needs was to be taken from income, with the $500,000 corpus to be invaded only for defendant's health care needs or if she eventually required nursing home care. Defendant should not be required to depend on fluctuations in the trust's income-earning capacity for her already-established alimony needs.
Because we have already concluded that the proofs support the trial judge's determination that defendant's alimony should be fixed at $4,200 per month, we remand for amendment of the judgment to specifically provide for $4,200 monthly payments and to revise the trust imposed by the trial judge to secure these $4,200 monthly payments.
To secure enforcement of alimony awards, N.J.S.A. 2A:34-23 permits the trial judge to "require reasonable security for the due observance of such orders, including, but not limited to, the creation of trusts or other security devices, to assure payment of reasonably foreseeable medical and educational expenses." (Emphasis added). It is appropriate to establish a trust to assure that these payments will be made during the lifetime of the parties, one of whom is old and the other infirm.
On remand, the trial judge shall establish a trust sufficiently funded to secure payment of plaintiff's alimony obligations *616 while both parties are alive. The trust shall provide that in the event of plaintiff's default, the trustee is authorized to withdraw the necessary principal and income to satisfy arrearages. We are sure that the trial judge can devise a method providing for withdrawal from the fund after a relatively short default period, without formal action or extensive judicial intervention. The trial judge should also determine what amount of money is necessary to fund a trust to secure defendant's alimony payments during the lifetime of the parties. There is no doubt that plaintiff is able to provide the funding for the trust. At trial, plaintiff's counsel stipulated that plaintiff has the "capacity financially to make any payment for support or alimony that the Court may reasonably fix."
The trust fund should also include an amount sufficient to satisfy defendant's alimony needs if she survives plaintiff. Plaintiff is old and in reasonable health. Defendant's physical condition is progressively deteriorating. He is wealthy, she is impecunious. Except for her modest $75,000 equitable distribution award and the payment of retroactive pendente lite support, she is totally dependent on alimony which she will receive to sustain herself.
N.J.S.A. 2A:34-25, as amended, L. 1988, c. 153, § 7, authorizes a court to order a spouse "to maintain life insurance for the protection of the former spouse ... in the event of the payer spouse's death." Plaintiff is undoubtedly too old to obtain life insurance to secure continuation of defendant's alimony payments after his death.
In these circumstances, equity cries out for some relief. The requirement that defendant obtain life insurance on his life or create a trust fund to guarantee future alimony payments is appropriate and plainly within the broad authority conferred upon a judge in a matrimonial action by the provisions of N.J.S.A. 2A:34-23 to make such order as to alimony and maintenance of the wife, either before or after judgment, as the circumstances of the parties and nature of the case shall render fit, reasonable and just, and to require reasonable security for the due observation of such order.
[Davis v. Davis, 184 N.J. Super. 430, 439, 446 A.2d 540 (App.Div. 1982).]
*617 Of course, the trust fund should provide appropriate conditions to protect the interests of both parties. Id. at 439-40, 446 A.2d 540. Unless plaintiff agrees otherwise, upon defendant's death, the trust proceeds should revert to him or his heirs or other legal designees, not to charity.
The trial judge found that plaintiff's support expenses up to the time of trial were $2,000 per month. Plaintiff contends that retroactive alimony is improper, citing Raymond v. Raymond, 39 N.J. Super. 24, 32, 120 A.2d 270 (Ch.Div. 1956). At the very least, plaintiff would certainly be required to pay support retroactive to the court's first pendente lite support order. Martindell v. Martindell, 21 N.J. 341, 353, 122 A.2d 352 (1956). There is no reason to deny defendant's entire retroactive pendente lite support claim.
Defendant's first application, made approximately six months after the plaintiff's complaint was filed, was denied. She was not granted any pendente lite support until after the trial judge ruled that the antenuptial agreement was unenforceable, perhaps because he was reluctant to make such an award before determining the enforceability of the agreement. Defendant then received $250 per week in pendente lite support. Upon conclusion of the trial, the trial judge determined that defendant's support needs during the pendency of the action were $2,000 per month, and ordered payment retroactive to the date the complaint was filed, allowing plaintiff a credit for any support payments made during that period.
A trial judge, who hears all of the testimony at trial, is in a much better position to determine the parties' financial needs during the pendency of the action than a motion judge who rules upon a pendente lite support application. The trial judge, who is equipped with all the evidence produced at trial, should be permitted to correct an obviously unjust pretrial support award, reimbursing the party entitled to increased support from what could otherwise be insurmountable debt, and perhaps destitution.
*618 The $2,000 per month retroactively fixed for pendente lite support was consistent with the evidence at trial, based largely on defendant's estimate of her monthly living expenses up to and including the trial. Defendant needs the assistance of others for her home care. Until now, that assistance had been provided by her son and his girlfriend. There will surely come a time, if it has not already occurred, when defendant will have to pay for these expenses. Additional home care costs account for much of the difference between the $2,000 pendente lite support and the $4,200 monthly alimony.
We do not suggest that a retroactive increase in pendente lite support is appropriate in every case. It is necessary in this case to reimburse this physically disabled defendant for the debts incurred by her during the pendency of this trial. The trial judge recognized this need for financial reimbursement, and appropriately exercised his power to grant defendant the money to which she was entitled. This retroactive correction of the woefully inadequate $250 per week court order was a commendable exercise of his equitable jurisdiction.
Finally, we affirm the trial judge's $60,000 award of counsel fees to the defendant.
We do not read Mayer v. Mayer, 180 N.J. Super. 164, 169, 434 A.2d 614 (App.Div.), certif. denied, 88 N.J. 494, 443 A.2d 709 (1981), to require a plenary hearing whenever one party challenges the attorney's fees sought by another party in a matrimonial action. In Mayer, we ordered a plenary hearing as to counsel fees and costs because the papers in support of the application were patently insufficient. We ordered a plenary hearing to
test the various items contained in the certifications by counsel filed in support of the two applications for counsel fees, and to enable him to test and to challenge the bill of each of the experts by requiring each to detail the precise nature of all of the services rendered by him, the time spent and the rate or rates of compensation charged  including the right to introduce evidence in challenge to the reasonableness of the rates charged by said experts, the necessity for any part of the services performed, the time expended, etc. [Ibid.]
*619 We see no need for such an extensive and time-wasting hearing in this case. The trial judge had the benefit of reviewing the voluminous pleadings and pretrial motions, responsive papers and orders drafted by the parties, and had the opportunity to observe counsel's performance at trial. He was able to calculate the reasonable value of these services, including pretrial preparation. Ninety-thousand dollars was requested and $60,000 was awarded. We recognize the historical right of trial judges to exercise discretion to award counsel fees in certain matrimonial cases pursuant to R. 4:42-9(a)(1), without always requiring a plenary hearing where there is a dispute.
Enough is enough. This was a reasonable and realistic counsel fee award. We will not remand for a hearing on counsel fees so that the parties can spend more money in attorneys' fees to determine what those fees should have been in the first place.
The retroactive and current alimony awards are payable immediately, without awaiting formal entry by the Family Part of an amended judgment.
Affirmed in part, reversed in part. Remanded to the Family Part for entry of an amended judgment and appropriate proceedings pursuant to this opinion. We do not retain jurisdiction.