986 A.2d 8 (2010)
411 N.J. Super. 292
Robert J. TRIFFIN, Plaintiff-Respondent/Cross-Appellant,
v.
AUTOMATIC DATA PROCESSING, INC., Defendant/Third-Party Plaintiff-Appellant/Cross-Respondent,
v.
Linda Avallone, Third-Party Defendant.
No. A-5533-07T3.
Superior Court of New Jersey, Appellate Division.
Argued November 18, 2009.
Decided January 11, 2010.
*11 Robert J. Triffin, appellant, argued the cause pro se.
Dennis T. Kearney, argued the cause for respondent (Day Pitney, L.L.P., attorneys; Mr. Kearney, on the brief, Florham Park; Carole Lynn Nowicki, Newark, on the brief).
Before Judges GRAVES, SABATINO and LYONS.
The opinion of the court was delivered by
LYONS, J.A.D.
Plaintiff, Robert J. Triffin, appeals from an order entered on July 1, 2008. The order was entered by Judge Donald S. Goldman and finds that Triffin by clear and convincing evidence committed a fraud on the court. The order goes on to award defendant, Automatic Data Processing, Inc. (ADP), counsel fees and costs in the amount of $44,000 and outlines various sanctions by way of an injunction against Triffin designed to discourage future fraud. The following factual and procedural history is relevant to our consideration of the issues advanced on appeal.

A.
This case arises from our remand in Triffin v. Automatic Data Processing, Inc., 394 N.J.Super. 237, 926 A.2d 362 (App.Div.2007) (Triffin I). We need not set out in detail all of the facts and procedural history surrounding this matter as it is adequately set forth in Triffin I. Suffice it to say that in Triffin I, Triffin had sued ADP on certain dishonored checks. ADP refused to pay on the items and countersued Triffin for fraud, claiming the assignments obtained from holders were fraudulent. Triffin contested the jury's verdict, finding Triffin liable for common law fraud, awarding ADP $132,600 in compensatory damages, and awarding $50,000 in punitive damages. In Triffin I, we determined that the jury's finding of common law fraud could not stand. Id. at 249, 926 A.2d 362. While Triffin had knowingly made a material misrepresentation to ADP, thereby causing ADP to sustain damages according to the jury's verdict, we were unable to find that ADP at any point actually relied on the documents at issue.
Though we vacated the jury's verdict on common law fraud, we did find that "[i]n this case, there has been a wrong in our view, a possible fraud on the court." Id. at 251, 926 A.2d 362. We explained that a fraud on the court occurs "where it can be demonstrated, clearly and convincingly, that a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." Ibid. (quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir.1989); Perna v. Elec. Data Sys. Corp., 916 F.Supp. 388, 397 (D.N.J.1995)). We further noted that unlike common law fraud on a party, fraud on a court does not require reliance. Ibid. We noted that "[s]eparate and distinct from court rules and statutes, courts possess an inherent power to sanction an individual for committing a fraud on the court." Ibid. Consequently, we remanded the matter to the trial court for further proceedings. We held that, "[f]ollowing a hearing, the trial court may impose sanctions on plaintiff on its own motion or on the application of defendant, or both." Id. at 253, 926 A.2d 362.
ADP filed a motion for sanctions with the trial court based on our remand order on December 6, 2007. In that motion, *12 ADP requested all counsel fees associated with the litigation, including those spent on its failed counterclaims at trial. Judge Goldman conducted a proof hearing on February 1, 2008, to determine if Triffin had, in fact, committed a fraud on the court. At that hearing, ADP presented the testimony of three witnesses in order to establish its legal fees and costs associated with uncovering Triffin's fraud and with litigating the underlying trial, appeal, and the motion for sanctions.
Michael Boyle, a private investigator hired by ADP to investigate the circumstances surrounding Triffin's acquisitions of the checks, was the first to testify on ADP's behalf. Boyle had also testified for ADP during the 2004 trial, and Judge Goldman asked that that testimony be incorporated into the record by reference. According to Boyle, the costs associated with his investigation into the legitimacy of the checks and the assignments totaled "$8,407.17."
Joan Ibsen, Esq., in-house counsel for ADP and a witness at the 2004 trial, also testified at the hearing. She was responsible for "review[ing] the legal fees before they're submitted to [defendant's] accounts payable" department. She testified that she reviewed the invoices submitted by Day Pitney, LLP, ADP's counsel, in connection with the litigation and determined that the fees were reasonable.
After ADP's counsel completed his direct examination of Ibsen, Triffin moved to have her testimony stricken from the record because she could not testify that she personally knew "that all of the services that are referenced in these bills were actually performed." Ibsen then testified that she had reviewed the work product that had been billed to ADP, had been present during the 2004 trial, and therefore, had personal knowledge concerning the validity of many of the fees. The trial court denied Triffin's motion to strike Ibsen's testimony, and Triffin had no further questions for Ibsen on cross-examination.
Lastly, Carole Lynn Nowicki, Esq., an attorney at Day Pitney who witnessed events while second-chairing the underlying trial, testified about the legal services Day Pitney performed for ADP in the course of this litigation. She also described Triffin's method of fabricating particular assignment agreements.
Triffin testified in opposition to ADP's motion for sanctions. He stated that he believed the fact that he did not secure the check sellers' signatures on the assignment agreements was immaterial "so long as [he was] authorized toto put that individual's signature on that document...." Triffin argued that, "at the time these respective documents were filed with this court," he believed the check sellers had given such authorization for every assignment agreement he presented through "oral conversation as well as the course of conduct." Triffin contended that he could not be held liable for fraud on the court because he lacked the "scienter" to commit fraud. He argued that he simply did not discern that cutting and pasting the signatures of the check sellers onto the assignment agreements, without their knowledge or explicit consent, was wrong and that he had a "pure heart [and an] empty head."
At the close of testimony, Judge Goldman requested that ADP submit a modified set of invoices that only included legal services and costs from the inception of the litigation to the order granting summary judgment. The judge also "welcome[d] any additional briefs on any of the issues that were raised during this hearing here, that people feel that is pertinent to raise, as long as it's not duplicative of that which they've already said." The judge then set March 28, 2008, to resume the hearing.
*13 On February 12, 2008, ADP submitted invoices for legal services dated February 2003 to October 2003, representing legal fees from when the action was initially filed up until the motion court entered the order for summary judgment on September 15, 2003. ADP also included an affidavit from Dennis Kearney, Esq., ADP's lead counsel and attorney of record throughout the entirety of the litigation. Kearney's affidavit stated that he "personally reviewed the attached invoices" and calculated the legal fees associated with the pre-summary judgment litigation to equal "$78,630.35."
Triffin filed an additional brief on February 29, 2008, in which he reiterated that ADP had not established by clear and convincing evidence that he had the scienter to commit fraud on the court. Triffin also argued that the pre-summary judgment invoices ADP had submitted to the court on February 12, 2008, along with Kearney's affidavit, were inadmissible because ADP did not submit its original retainer agreement and Kearney did not have personal knowledge of all the work referenced in the invoices. Triffin argued that if the judge chose to consider the invoices and supporting affidavit, he had a right to cross-examine Kearney.
The remand hearing resumed on March 28, 2008, and the parties gave their closing arguments. The trial judge then entered his oral decision in favor of ADP. Judge Goldman found that "[w]hat Mr. Triffin did in this case was terribly wrong, no matter how you slice it. Submitting to the [c]ourt as true and genuine documents, documents that have been forged, documents who's [sic] signature has been transposed by the... equivalent of photo shopping." The trial judge went on to find that:
[w]hen one makes a representation and presents a document to a[c]ourt, whether it be asas an attachment to a pleading and in this case those documents were part of the [c]ourt proceedings and submitted to the [c]ourt as legitimate and original or copies of original documents, and they're not. That is a fraud....
...
The fact that there is no reliance and no damages doesn't mean that there wasn't a fraud on the court. There was. The Appellate Division found it.
The trial judge then determined that ADP was entitled to damages. However, the judge found that ADP should not be compensated for legal fees and costs associated with "the period of time following the dismissal of the original Special Civil [P]art complaint .... [and] for the expenses, costs, legal fees, investigation fees and other fees that they incurred in the prosecuting of their failed RICO complaint." Triffin then reiterated his objection to admitting the subject legal bills into evidence without having the opportunity to first cross-examine Kearney. The trial judge informed Triffin that he did not have a right to cross-examination; however, the judge would accept line-by-line objections to the bills within thirty days. Judge Goldman also requested that ADP submit invoices for the legal fees incurred in connection with the litigation after our remand.
The trial judge further held that "[m]aking [Triffin] pay [money] ... is not enough." Judge Goldman stated that he intended on entering "an injunction against Mr. Triffin that will require him to include ... a certification" attached to any document he files with a court "which will certify, under penalties of perjury, that Mr. Triffin has in his possession the original, signed version of that document [which he claims to have]...."
On April 28, 2008, Triffin submitted a four-page document outlining his objections *14 to ADP's pre-summary judgment legal fees and Kearney's affidavit. However, Triffin's objections were generalized and consisted of legal arguments as to why he was entitled to cross-examine Kearney. Triffin did not include any specific objection to any particular billing entry.
On June 4, 2008, Kearney submitted an affidavit and invoices detailing the legal fees associated with the subject litigation after our remand, as requested by the judge. Kearney stated that he "personally reviewed each time entry to ensure that the amount of time listed for each entry is reasonable and necessary for the type of work performed." Triffin submitted line-by-line objections to those invoices, arguing that (1) Kearney lacked personal knowledge of the work reflected in the bills; (2) the legal bills were hearsay and Triffin's due process rights would be violated if he was not permitted to cross-examine Kearney; and (3) the affidavit did not comply with the requirements of R.P.C. 1.5.
On July 14, 2008, Judge Goldman entered a written decision which incorporated his March 28, 2008 oral decision. The judge found that ADP could not establish common law fraud because it did not rely on Triffin's assignment agreements and further found that a "great majority" of its legal fees "were in pursuit of its own failed counterclaims both before and after Triffin's affirmative claims were dismissed." However, the judge found that "[t]here is no question ... that Triffin committed a fraud on the court" and ADP's "efforts on remand helped prove, by clear and convincing evidence," that Triffin perpetrated that fraud. As such, the judge found that Triffin "well deserves sanctions" and ADP was entitled to some compensation for its legal fees.
Judge Goldman reviewed ADP's affidavit of services "covering only the time period after the remand," which totaled $61,024.50 plus $4,047.57 in costs. The judge found that those hours were reasonable and were often necessitated by Triffin's "dogged fight against the imposition of any sanctions." The judge noted that Triffin objected to the amount of the fees, but also found that he had failed to make any specific objection to any particular bill. However, in order to address Triffin's objections, the judge reduced ADP's legal fee award by one-third to $40,000 plus $4,000 in costs, for a total of $44,000.
Judge Goldman also rejected Triffin's argument that "due process requires that he be permitted to cross-examine Day Pitney counsel as to the work done and the reasonableness of their claimed fee." The judge found he could determine the reasonableness of the fee based on Kearney's affidavit and, as such, a plenary hearing to allow Kearney to testify was not necessary. The judge noted that "Triffin fail[ed] to explain how [the court] would benefit from such a hearing."
After determining ADP's attorney's fee award, Judge Goldman went on to note that "a modest financial penalty is unlikely to deter future misconduct" on Triffin's part. As such, the judge's order required Triffin to provide a certification, under oath, to indicate whether or not he possesses a document with "original signatures whenever he submits a document to a trial court either as a pleading, as an attachment to a motion, or seeks to mark an exhibit for identification or in evidence at trial." The opposing party or the court, sua sponte, could then seek to "suppress a pleading or other filing that does not comply with this order." The judge required the order to be published in the New Jersey Law Journal and in the New Jersey Lawyer. The court deferred publication for twenty days so Triffin could seek a stay from us. Triffin opted not to do so. *15 The order was only in effect for one year, beginning on September 1, 2008, and ending on August 31, 2009.
Triffin filed a notice of appeal on July 21, 2008. ADP filed a cross-appeal seeking "alternative relief for sanctions against Robert J. Triffin in the event that this Court grants Triffin's appeal."

B.
On appeal, Triffin submits the following arguments for reconsideration:
POINT ONE
THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT FAILED TO COMPLY WITH THIS COURT'S REMAND MANDATE, AND AS IT IS PRECISELY WRITTEN.
POINT TWO
THE TRIAL COURT COMMITTED PLAIN AND REVERSIBLE ERROR WHEN IT PERMITTED DENNIS T. KEARNEY TO TESTIFY BY AFFIDAVITS, AND WHEN IT ADMITTED KEARNEY'S AFFIDAVITS INTO EVIDENCE TO ESTABLISH THE TRUTH OF THE FACTS ASSERTED THEREIN, BUT WITHOUT FIRST PERMITTING TRIFFIN TO FIRST CROSS-EXAMINE KEARNEY AS TO THE TRUTH OF THE MATTERS ASSERTED THEREIN.
POINT THREE
THE TRIAL COURT COMMITTED REVERSIBLE [ERROR] WHEN IT FAILED TO ACT UPON TRIFFIN'S REQUEST FOR A JURY TRIAL UPON ALL THE MATERIAL ELEMENTS OF THIS COURT'S DEFINITION OF FRAUD ON THE COURT.
POINT FOUR
THE TRIAL COURT COMMITTED REVERSIBLE ERROR OF LAW WHEN IT FAILED TO ANALYZE ADP'S COUNSEL'S AFFIDAVITS OF SERVICE AND FEES PURSUANT TO THE STANDARDS OF R.P.C. 1.5.
POINT FIVE
THE TRIAL COURT BOTH [SIC] COMMITTED REVERSIBLE ERROR OF LAW, AND ABUSED ITS DISCRETION, WHEN IT FAILED TO DETERMINE THE EXTENT OF TRIFFIN'S CULPABILITY AS A FUNCTION OF ITS AWARD OF $44,000.00 IN COUNSEL FEE SANCTIONS, AND ISSUANCE OF A MANDATORY INJUNCTION AGAINST TRIFFIN.

C.
Triffin argues that Judge Goldman failed to comply with this court's order on remand "as it is precisely written." Specifically, Triffin points to our finding that "[i]n this case, there has been a wrong in our view, a possible fraud on the court." Triffin I, supra, 394 N.J.Super. at 251, 926 A.2d 362. Triffin stresses that we did not make a definitive finding of fraud on the court but, rather, remanded the issue to the trial court to make such a determination. Triffin contends that Judge Goldman failed to make an independent finding of fraud and, therefore, his order requiring Triffin to pay sanctions should be reversed. Specifically, Triffin takes issue with a comment Judge Goldman made in his oral decision on March 28, 2008. The judge stated that "the Appellate Division said ... to me, as the trial court, they saidthey found that what you did was a fraud on the court, they remanded the matter to the trial court for further proceedings." Triffin contends that this isolated statement illustrates that Judge Goldman did not make his own findings of fact, but mistakenly applied our determination of "possible fraud."
*16 Findings by a trial court are binding on appeal when supported by adequate, substantial, and credible evidence. Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484, 323 A.2d 495 (1974). Therefore, an appellate court should not disturb the "factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ibid. Thus, in order for Judge Goldman's order to survive appellate review, it must be supported by its own findings of fact. While this court may "exercise its original fact finding jurisdiction" in cases where the record below is insufficient, it should do so "sparingly and in none but a clear case where there is no doubt about the matter." Ibid. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
Our order "remand[ed] this matter to the trial court for further proceedings," either on ADP's application for sanctions or on the court's own motion. Triffin I, supra, 394 N.J.Super. at 253, 926 A.2d 362. "Following a hearing," we gave the trial court license to levy sanctions against Triffin, if warranted. Ibid. "It is beyond dispute that a trial judge has the responsibility to comply with pronouncements of an appellate court." Tomaino v. Burman, 364 N.J.Super. 224, 233, 834 A.2d 1095 (App.Div.2003), certif. denied, 179 N.J. 310, 845 A.2d 135(2004). "It is the peremptory duty of the trial court, on remand, to obey the mandate of the appellate tribunal precisely as it is written." Ibid. (quoting Jersey City Redevelopment Agency v. Mack Props. Co. #3, 280 N.J.Super. 553, 562, 656 A.2d 35 (App.Div. 1995)). Triffin argues that the trial court failed in this duty, but Triffin's argument is not supported by the record.
The statement by Judge Goldman, when looked at by itself, makes it appear that he merely relied on our finding and did not make any findings of his own. However, Judge Goldman held a two day hearing to determine if Triffin committed a fraud on the court. He heard testimony from Triffin, who explained his method of digitally transferring the check sellers' signatures onto the assignment agreements. Judge Goldman also heard Triffin's testimony concerning his intent, in which Triffin argued that he did not understand his behavior was "wrong." Nowicki, one of ADP's lawyers, described Triffin's method of fabricating particular assignment agreements. Clearly, the trial judge heard evidence concerning Triffin's fraud and did not simply rely on our statements.
In his oral decision, Judge Goldman made his own independent finding of fraud on the court, stating that "[w]hen one makes a representation and presents a document to a[c]ourt, ... [as] part of the [c]ourt proceedings and submitted to the [c]ourt as legitimate and original copies of original documents, and they're not. That is a fraud...." Moreover, in his written decision, Judge Goldman expressly found that ADP submitted adequate proofs to show Triffin's intent to defraud the court. He found that "[t]here is no question ... that Triffin committed a fraud on the court," and ADP's "efforts on remand helped prove, by clear and convincing evidence" that Triffin perpetrated that fraud. Judge Goldman specifically rejected Triffin's assertion that he did not know what he was doing was wrong. The judge stated:
I do not believe Triffin when he says he did not know that using computer technology *17 to secretly insert a signature on documents was wrong. Triffin says he thought he was authorized to insert the signatures. If Triffin really thought he was authorized to do so, he could have simply signed their names. There would have been no need to use technology to disguise the fact that he inserted their name and use[d] technology to deceive parties in a lawsuit and the court.... Thus, even using his own proposed standard, I find by clear and convincing evidence that he "sentiently" committed fraud on the court.
Clearly, Judge Goldman made his own independent findings and those findings are supported by substantial credible evidence in the record. Triffin does not deny that he digitally placed the signatures onto the assignment agreements. Likewise, he does not deny that he withheld this information from the court. Triffin's sole argument against a finding of fraud on the court rests on his assertion that he did not believe he was acting inappropriately. The trial judge rejected this argument based on substantial credible evidence in the record.
While Judge Goldman did misspeak at one point in his oral decision and stated that we found fraud, as opposed to leaving that determination to the trial court, he did not abdicate his responsibility to make his own findings. We, therefore, reject plaintiff's argument and affirm the trial judge's order for sanctions.

D.
Triffin contends that the trial judge erred in relying on Kearney's February 12, 2008 and June 4, 2008 affidavits and accompanying invoices to establish ADP's legal fees incurred in this litigation. Specifically, Triffin argues that the affidavits are hearsay and, at a minimum, due process gave him the right to a plenary hearing in order cross-examine Kearney concerning the fees.
Triffin made this objection during the remand hearing, and the trial court rejected his assertion. Judge Goldman found that he could determine the reasonableness of the fees based on Kearney's affidavit and, as such, a plenary hearing for Triffin to examine Kearney was unnecessary. The judge noted that "[t]his is particularly true when Triffin fails to dispute any specific entry and fails to explain how I might benefit from a hearing." The judge also noted that "Triffin fail[ed] to explain how [the court] would benefit from such a hearing."
Our Supreme Court has "strongly discourage[d] the use of an attorney-fee application as an invitation to become mired in a second round of litigation." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 24, 860 A.2d 435 (2004). "[A] plenary hearing should be conducted only when the certifications of counsel raise material factual disputes that can be resolved solely by the taking of testimony." Ibid. Such hearings "will be a rare, not a routine, occurrence." Ibid.; see Jacobitti v. Jacobitti, 263 N.J.Super. 608, 619, 623 A.2d 794 (App.Div.1993), aff'd, 135 N.J. 571, 641 A.2d 535 (1994) (finding no need for an "extensive and time-wasting hearing" on attorney's fees in a matrimonial action). As such, the trial courts have "wide latitude in resolving attorney-fee applications," and appellate courts will not disturb the decision to deny a plenary hearing unless there is a "clear abuse of discretion." Furst, supra, 182 N.J. at 25, 860 A.2d 435.
In this case, Triffin contends that Kearney's affidavit was not sufficient for Judge Goldman to determine the amount of attorney's fees ADP expended on the litigation after our remand. Rule 4:42-9(b) *18 requires that all applications for attorney's fees "shall be supported by an affidavit of services addressing the factors enumerated by R.P.C. 1.5(a)." Twp. of W. Orange v. 769 Assocs., LLC, 198 N.J. 529, 542, 969 A.2d 1080 (2009). The Rule does not call for a plenary hearing. This implicitly suggests that an affidavit is sufficient to determine the amount of attorney's fees.
Moreover, Kearney's affidavits comply with the requirements of Rule 4:42-9(b). They specifically set forth that he was ADP's attorney throughout the litigation, he was familiar with the case, and he personally reviewed all of the invoices. The invoices themselves showed the amount of hours worked and the rate that ADP was billed. Thus, several of the factors set forth in R.P.C. 1.5(a)(1)-(8) were addressed. Judge Goldman, after reviewing the affidavits and invoices, found that they were adequate to determine attorney's fees and further held that the amount billed was reasonable. Because that determination was supported by substantial credible evidence, it will not be disturbed by us.
Likewise, Judge Goldman found that Triffin did not set forth any reasons for holding a plenary hearing on the issue of Kearney's affidavit. As discussed above, a trial judge's determination not to hold a plenary hearing on the issue of attorney's fees should be upheld so long as there are no "material factual disputes that can be resolved solely by the taking of testimony." Furst, supra, 182 N.J. at 24, 860 A.2d 435. Here, there was no such dispute. Triffin simply argued he was entitled to cross-examine Kearney. Because there was not a "clear abuse of discretion," we will not disturb Judge Goldman's decision to deny a plenary hearing. Id. at 25, 860 A.2d 435.

E.
Triffin argues that he was entitled to a jury trial on the issue of whether he met all the factors required for a finding of fraud on the court. Specifically, Triffin contends that the requirements of fraud on the court are similar to those of common law fraud. He argues that "it follows, therefore, that Triffin should be entitled to a trial by jury as to the material issue of whether he knowingly acted with an `improper purpose' at the time he attached the documents at issue to his complaint."
Article I, Paragraph 9 of the 1947 New Jersey Constitution guarantees that "[t]he right of trial by jury shall remain inviolate." But "in civil matters the constitutional right to a jury trial is not absolute." Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 537, 666 A.2d 146 (1995). "Only those actions that triggered the right of a jury trial that predated our State Constitutions, and those that were created anew with enactment of New Jersey's 1776 Constitution, the 1844 Constitution, or the 1947 Constitution serve as the basis for that constitutional right today." Ins. Co. of N. Am. v. Anthony Amadei Sand & Gravel, 162 N.J. 168, 175-76, 742 A.2d 550 (1999). Generally, the New Jersey Constitution protects the right of trial by jury in legal, but not equitable, actions. Id. at 176, 742 A.2d 550. "In determining whether a case is primarily legal or equitable, [courts] look to the historical basis for the cause of action and focus on the requested relief." Weinisch v. Sawyer, 123 N.J. 333, 343, 587 A.2d 615 (1991).
When first addressing this case, we determined that the historical basis for the claim of fraud on the court came from the court's inherent power to levy sanctions against those who abused the legal process. Triffin I, supra, 394 N.J.Super. at 251, 926 A.2d 362. We based that holding on the decision of Atkinson v. Pittsgrove *19 Twp., 193 N.J.Super. 23, 30-32, 471 A.2d 1215 (Ch.Div.1983). In that case, the plaintiff pursued "the same fruitless and groundless cause four times," in separate litigations and so the defendant, in its motion for summary judgment, requested attorney's fees. The Atkinson court determined that it had "the power and duty to protect the purity and efficiency of its own processes." Id. at 32, 471 A.2d 1215. In granting the defendant's request for attorney's fees, the court "noted that it possessed the inherent power to impose sanctions and that such authority stemmed from its status as a constitutional court whose basic jurisdiction and prerogatives are traced from the Court of Kings Bench and the Court of Chancery." Triffin I, supra, 394 N.J.Super. at 252, 926 A.2d 362.
Historically, there was no right to a jury trial in either the Chancery Court or the Court of Kings Bench at common law. By legal fiction, the King was always present at the Court of King's Bench, and therefore, no jury was necessary because no one was "permitted to question the authority of the Crown." O'Neill v. State Highway Dep't, 77 N.J.Super. 262, 277, 186 A.2d 127 (App.Div.1962) (Goldmann, J., dissenting), rev'd on other grounds, 40 N.J. 326, 191 A.2d 481 (1963). Likewise, it "has long been understood" that the constitutional provision affording litigants the right of trial by jury does not extend to equitable actions in Chancery. Brennan v. Orban, 145 N.J. 282, 292, 678 A.2d 667 (1996).
It is clear that a court's power to levy sanctions against a litigant for fraud on the court is grounded in the court's equitable powers, and, as such, Triffin had no right to a jury trial. We had already implied that a bench trial was appropriate on remand by citing Atkinson and by noting that "the inherent power to impose sanctions" is traced from courts of equity. Therefore, Judge Goldman did not abuse his discretion by denying Triffin's request for a jury trial.

F.
We turn next to Triffin's argument that the trial judge erred in failing to consider any of the factors set forth in R.P.C. 1.5(a) when he made his attorney's fees determination.
[W]hen a motion for counsel fees and costs is properly presented, the trial court must exercise its discretion within careful confines to determine the `lodestar'that is, the number of hours reasonably expended multiplied by a reasonable hourly rateand then determine whether any adjustments to the product are required.
[R.M. v. Supreme Court of N.J., 190 N.J. 1, 4, 918 A.2d 7 (2007)].
Rule 4:42-9(b) sets forth the procedure for calculating a fee: "all applications for the allowance of fees shall be supported by an affidavit of services addressing the factors enumerated by R.P.C. 1.5(a)." Twp. of W. Orange, supra, 198 N.J. at 542, 969 A.2d 1080. R.P.C. 1.5(a), in turn, prescribes that "[a] lawyer's fee shall be reasonable." Among the factors to be considered in determining the reasonableness of a fee are the following:
(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
(3) the fee customarily charged in the locality for similar legal services;
(4) the amount involved and the results obtained;
(5) the time limitations imposed by the client or by the circumstances;

*20 (6) the nature and length of the professional relationship with the client;
(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
(8) whether the fee is fixed or contingent.
[R.P.C. 1.5(a)(1)-(8).]
The list is not exhaustive and all factors will not be relevant in every case. Twp. of W. Orange, supra, 198 N.J. at 542, 969 A.2d 1080.
While Triffin contends that the trial judge failed to consider any of the factors set forth in R.P.C. 1.5(a) when he made his attorney's fees determination, this assertion is not supported by the record. In his written opinion, Judge Goldman first noted that much of ADP's attorney's fees were in pursuit of its failed common law fraud, RICO, and negligence claims and, as such, ADP was not entitled to those fees. However, the judge went on to note that Triffin's fraud on the court could not have been uncovered without the help of ADP's investigation. The judge also stated that Triffin fought defendant doggedly in an attempt to avoid sanction, thereby increasing the time necessary to litigate the case. Based on these considerations, the judge held that ADP was entitled to post-remand counsel fees.
After determining that an award of attorney's fees was appropriate, Judge Goldman then considered that:
[t]he hours claimed are reasonable and the hourly rated for ADP counsel from Day Pitney are commensurate with hourly rates charged by senior trial attorneys in comparable firms.... I have been able to observe the work in court and have been the beneficiary of the written work product involved. Nonetheless, to a very great extent, the efforts of counsel here are to maintain the integrity of the court and to protect the justice system. I view the work of counsel as a public service.
After making these determinations, Judge Goldman reduced the fees requested by one-third to take "into account" Triffin's objections.
The trial judge considered several of the factors set forth in R.P.C. 1.5(a) and placed those considerations on the record. He made reference to: the hours defendant claimed and the rates charged, R.P.C. 1.5(a)(8); Triffin's own hand in increasing the legal fees, R.P.C. 1.5(a)(1); the amount charged based on the average hourly rate of "senior attorneys in comparable firms," R.P.C. 1.5(a)(3) and (7); the amount ADP was seeking in legal fees and the reason for the amount actually awarded, R.P.C. 1.5(a)(4); and the fact that ADP did not ultimately succeed in its common law fraud claim, though plaintiff had clearly acted wrongfully, R.P.C. 1.5(a)(4).
Based on his application of the facts to law, Judge Goldman's decision to award ADP two-thirds of its legal fees associated with the remand hearing is reasonable and supported by the record. We, therefore, reject Triffin's argument that Judge Goldman failed to consider the required factors for making an award of attorney's fees.

G.
Triffin argues that the trial judge abused his discretion in ordering Triffin to pay ADP $44,000 in attorney's fees and costs; Triffin claims that because he did not "act with purpose," the judge's actions were "draconian and constitutionally excessive." In other words, Triffin argues that the sanctions were not proportional to the alleged wrong.
As part of a contempt proceeding, a court is permitted to order a party to "pay the reasonable expenses, including attorney's fees, caused by" that party's *21 wrongful actions. Abtrax Pharms., Inc. v. Elkins-Sinn, Inc., 139 N.J. 499, 514, 655 A.2d 1368 (1995). Fraud on the court and contempt of court, which both "disturb[ ]... the course of justice," fall "within the [same] general idea." Sheehan v. Sheehan, 77 N.J. Eq. 411, 413, 77 A. 1063 (Ch.1910). Therefore, it is within the court's discretion to award attorney's fees as a sanction for fraud on the court. See Kingsdorf v. Kingsdorf, 351 N.J.Super. 144, 159, 797 A.2d 206 (App.Div.2002) (holding that the plaintiff had committed a fraud on the court and, therefore, allowing the defendant to submit affidavit of services for attorney's fees to the trial court). Such "fee determinations by trial courts will be disturbed only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444, 771 A.2d 1194 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317, 661 A.2d 1202 (1995)); McGowan v. O'Rourke, 391 N.J.Super. 502, 508, 918 A.2d 716 (App. Div.2007).
As explained above,
[t]he reasonableness of attorney's fees is determined by the court considering the factors enumerated in [Rule] 4:42-9(b). That rule incorporates the factors stated in R.P.C. 1.5. If, after considering those factors, the court finds that the ... attorney's fees are reasonable ... in an exercise of its discretion, [the court] may award those fees.
[McGowan, supra, 391 N.J.Super. at 508, 918 A.2d 716.]
In this case, Judge Goldman considered the invoices submitted by ADP and only considered those fees that were incurred after our remand. Judge Goldman found, based on his experience as a former attorney and judge, that the legal fees charged by Day Pitney, ADP's attorneys, were reasonable. The judge also noted that he was the "beneficiary of the written work product involved" which further allowed him to judge the reasonableness of the fees incurred. Moreover, while Judge Goldman found ADP's fee of $61,024.50 and $4,047.57 in costs to be reasonable, he reduced that amount to $44,000 when determining the final fee award, in order to take Triffin's objections into consideration. Clearly, the fees the trial judge ordered Triffin to pay were reasonable pursuant to R.P.C. 1.5, and the amount is supported by substantial credible evidence.
The proportionality of the court's award of fees for a fraud on the court to the harm caused is an assessment which rests within the sound discretion of the trial judge. The award here was particularly temperate. The pursuit of claims using fraudulent documents mocks and threatens our system of justice, undermines confidence in our courts, and unnecessarily expends public funds. Monies are spent for not just attorneys' fees but jurors, judges, judicial staff, and public facilities. We find no fault in the proportionality of the award, particularly given these institutional considerations.

H.
ADP's cross-appeal contends that it was entitled to the full amount of its legal fees because "[t]he sanctions imposed represent a fraction of the fees incurred during the remand proceedings, and a smaller fraction yet of the total legal fees incurred in bringing Triffin's fraudulent conduct to light."
As stated above, Judge Goldman's award of attorney's fees is supported by substantial credible evidence and, therefore, is entitled to deference by this court. Packard-Bamberger & Co., supra, 167 N.J. at 444, 771 A.2d 1194. Judge Goldman refused to award ADP the fees associated with its failed trial claims because "ADP should not be rewarded when it *22 could not prove its own claims". His decision to reduce ADP's reimbursement for the fees associated with the remand hearing was based on Triffin's objections to items on the fee invoices. Just as the trial judge's decision to award any fees was amply supported by the record, his decision to limit defendant's fee award to $44,000 is likewise supported. We, therefore, reject ADP's cross-appeal for additional counsel fees.
Affirmed.